# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

In re

AMRAT HOTELS, INC.

Bk. No. 11-_____-JMD
Chapter 11

Debtor.

**DEBTOR'S *EX PARTE* EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 361 AND 363 AND FED. R. BANKR. P. 4001(B) FOR (I) INTERIM AND FINAL ORDERS (A) AUTHORIZING USE OF CASH COLLATERAL AND (B) PROVIDING ADEQUATE PROTECTION, AND (II) SCHEDULING A FINAL HEARING WITH RESPECT TO THE USE OF CASH COLLATERAL**

Amrat Hotels, Inc., the above-captioned Debtor and Debtor-in-Possession (the "Debtor"), by its undersigned proposed attorneys, hereby moves pursuant to sections 105, 361, 362 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Fed. R. Bankr. P. 4001(b), for (I) the entry of interim and final orders (A) authorizing the use of cash collateral and (B) providing adequate protection, and (II) scheduling a final hearing with respect to the use of cash collateral.

The Debtor believes that its limited use of cash collateral for an interim period of two (2) weeks (the "Interim Use Period") and for an initial period thereafter for a total of thirteen (13) weeks (the "First Cash Collateral Period") will permit the Debtor to maintain essential business operations and preserve value for its creditors. Since the Debtor presently has modest cash available to it, its request for an interim order authorizing the immediate limited use of cash collateral is necessary to prevent immediate and irreparable harm to the Debtor's estate.

In support of this Motion, the Debtor submits the Affidavit of Nilesh Patel, attached herewith as **Exhibit A**, and further, respectfully states as follows:

13461155.1

## JURISDICTION, VENUE AND STATUTORY BASIS

1. This Court has jurisdiction to hear the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are sections 105, 361, 362 and 363 of the Bankruptcy Code and Fed. R. Bankr. P. 4001(b).

## FACTUAL BACKGROUND

3. On the date hereof (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its property as Debtor-in-Possession.

4. Debtor was incorporated in New Hampshire in 2004. Debtor operates a 54-unit hotel branded as an Econo Lodge Inn & Suites on Route 3 in Lincoln, New Hampshire (the "Hotel").

5. Debtor purchased the Hotel and the parcel of real estate on which it is situated (together, the "Collateral") in 2004, paying approximately $2.6 million therefor. The Debtor now believes that the Collateral was not worth anywhere near the purchase price.

6. Kennebunk Savings Bank ("KSB") extended a loan to the Debtor secured by the Collateral. By agreement of the parties, the terms of that loan were modified, as evidenced by a new Note and Mortgage (the "KSB First Mortgage"), both dated August 9, 2010. The total amount owing and secured by the KSB First Mortgage as of the Petition Date is $1,354,268.01.

7. Capital Regional Development Council ("CRDC") extended a loan to the Debtor secured by the Collateral, as evidenced by a Note and Mortgage (the "SBA Second Mortgage") dated September 21, 2004. The principal amount owing and secured by the SBA Second Mortgage as of the Petition Date is approximately $780,000.00.

8. KSB extended an additional loan to the Debtor secured by the Collateral. By agreement of the parties, the terms of that loan were modified, as evidenced by a new Note and Mortgage (the "KSB Third Mortgage"), both dated August 9, 2010. The principal amount owing and secured by the KSB Third Mortgage as of the Petition Date is $203,344.96.

9. The Town of Lincoln executed a tax lien against the Collateral on March 30, 2011 in the amount of $12,016.98.

10. The total indebtedness secured by the Collateral is $2,349,629.80.

11. The Debtor believes the Collateral to be worth approximately $1,194,000.00 today.

12. Other than the tax lien held by the Town of Lincoln, the KSB First Mortgage is the only truly secured debt.

13. The Debtor believes that the restructuring of its secured debt to reflect the true value of the Collateral will allow it to become a profitable venture and a long-term success going forward. The budget attached herewith as **Exhibit B** (the "Budget") demonstrates that the Debtor will operate on a cash positive basis throughout the Interim Use Period and throughout the First Cash Collateral Period.

14. The Budget provides the following adequate protection to KSB in respect of the KSB First Mortgage:

- KSB will receive weekly payments of interest on account of the Note secured by the KSB First Mortgage at the rate of 7.75% interest per annum (each weekly payment totals $1,942.00);

- The Town of Lincoln will receive monthly payments of interest on account of the tax lien at the rate of 12% per annum (each monthly payment totals $111.00);

- The Debtor will remain current on post-Petition Date real estate taxes, having budgeted monthly payments of $2,000.00;

- The Debtor will maintain all insurance policies in full force and effect, and the Budget accounts for the payment of all premiums coming due; and

- The Debtor has budgeted appropriate amounts for maintenance, repair, upkeep, and capital improvements meant to maintain and enhance the value of the Collateral.

15. As additional adequate protection, the Debtor proposes to grant KSB replacement liens, to the same extent, validity and priority as pre-petition; provided that such replacement liens shall not extend to avoidance actions under sections 544, 547, 548 and 553 of the Bankruptcy Code. In addition to replacement liens, KSB shall also have a superpriority administrative claim under sections 503(b)(1), 507(a) and 507(b) of the Bankruptcy Code for any diminution in the value of KSB's pre-petition collateral; provided, however, with respect to avoidance actions (other than section 549 of the Bankruptcy Code), such claims shall have equal priority with other administrative expenses allowed under section 507(a)(1) of the Bankruptcy Code.

16. On May 16, 2011, the Debtor's proposed counsel shared the Budget with counsel for KSB in an effort to obtain consent to the relief sought within this Motion.

**RELIEF REQUESTED**

17. The Debtor seeks authority to use cash to pay ordinary and necessary business expenses, including payroll, as set forth in the Budget, subject to permitted variances of 10% on a per line item basis and in the aggregate.

18. More specifically, during the Interim Use Period, the Debtor projects that it will take in revenues totaling approximately $12,115.00, and it requests permission to use $14,990.00. During the First Cash Collateral Period, the Debtor projects that it will take in revenues totaling $195,180.00, and it requests permission to use only $177,551.00.

19. The Debtor has been unable to secure any commitment from a lender to provide it with unsecured financing or with secured financing that would be sufficient to refinance the pre-Petition Date obligations due to KSB.

20. The use of the revenues from the Debtor's operations as requested herein is critical to avoid any negative impact to the Debtor's business. In particular, the Debtor's franchise agreement with Choice Hotels International, Inc. requires that the Debtor continue in business with no extended lapses thereof. If the Debtor was denied use of its cash collateral, it would not be able to operate and would have to shut down, thus putting into jeopardy its franchise rights and its very existence. The Debtor's sales revenues constitute its primary source of funds to cover the operating expenses of the Debtor, including the payment of payroll, and utilities. The payment of the ordinary operating expenses of the Debtor will preserve the Debtor's going concern value and is necessary for continued operation.

21. The Debtor requests the right to use cash as of the date of entry of the Interim Order through the date scheduled for a final hearing in accordance with Fed. R. Bankr. P. 4001(b), and thereafter on a final basis.

22. The Debtor agrees to operate its business in a manner consistent with its pre-petition practices, including the maintenance of appropriate levels of insurance.

23. The failure to grant the Debtor the relief requested on an exigent basis will result in irreparable damage to the Debtor's business operations, potentially jeopardizing the revenues now generated by the Debtor.

## **LEGAL SUPPORT**

24. Section 363(c) of the Bankruptcy Code provides in pertinent part as follows:

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless -

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

(3) Any hearing under paragraph (2)(B) of this subsection may be a preliminary hearing or may be consolidated with a hearing under subsection (e) of this section, but shall be scheduled in accordance with the needs of the debtor. If the hearing under paragraph (2)(B) of this subsection is a preliminary hearing, the court may authorize such use, sale, or lease only if there is a reasonable likelihood that the trustee will prevail at the final hearing under subsection (e) of this section. The court shall act promptly on any request for authorization under paragraph (2)(B) of this subsection.

25. Section 363(e) of the Bankruptcy Code provides in relevant part as follows:

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

26. Pursuant to section 363(2) of the Bankruptcy Code, the Debtor may use cash collateral either with the consent of KSB or approval from the Court.

27. The types of adequate protection available to protect a secured creditor whose cash collateral is going to be used by a debtor pursuant to § 363(c)(2)(B) are enumerated in § 361 of the Bankruptcy Code. That section envisions adequate protection to be provided either by cash payments, replacement liens, or other relief that will result in the realization by the secured creditor of the indubitable equivalent of the secured creditor's interest in such property. In each instance, the focus of the Bankruptcy Code is on making sure that any decrease in the value of the collateral during the period involved is adequately protected.

28. The form of adequate protection is decided on a case-by-case basis. *See* In re O'Connor, 808 F.2d 1393, 1396 (10th Cir. 1987); In re Martin, 761 F.2d 472 (8th Cir. 1985). The focus of the requirement is to protect a secured creditor from diminution in value of its interest in collateral during the reorganization process. *See* In re Ledgemere Land Corp., 116

B.R. 338, 343 (Bankr. D. Mass. 1990) (question of adequate protection should focus on secured lender's entire property interests, not just its interest in cash sought to be used); In re Kain, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); In re Becker Indus. Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

29. The Debtor submits that the adequate protection provisions outlined in paragraph 14 of this Motion, and as reflected in the attached Budget, adequately protect KSB's interests in its cash collateral by preserving (and potentially increasing) the Debtor's revenue, warranting the use of cash as requested herein.

## NOTICE

30. Notice of the hearing on this Motion was served on the following parties on the date on which it was filed by e-mail or facsimile: (1) the United States Trustee; (2) the Debtor's secured creditors, or, if applicable, the lawyers representing such creditors; and (3) the non-insider holders of the twenty largest unsecured claims against the Debtor, or, if applicable, the lawyers representing such holders. In light of the nature of the relief requested herein, the Debtor submits that no other further notice is required.

## NO PRIOR REQUEST

31. No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtor respectfully requests that the Court enter an order granting the relief requested herein, granting authority to the Debtor to use cash collateral on an interim and then final bases, scheduling a final hearing pursuant to Fed. R. Bankr. P. 4001(b), and granting the Debtor such other and further relief as this Court deems just and proper.

Respectfully submitted,

AMRAT HOTELS, INC.,

By its proposed attorneys,

NIXON PEABODY LLP

Date: May 17, 2011

/s/ *Daniel W. Sklar*
Daniel W. Sklar, Esq.
BNH# 01433
Nixon Peabody LLP
900 Elm Street
Manchester, NH 03101
Phone: (603) 628-4000
Fax: (603) 628-4040
Email:dsklar@nixonpeabody.com